# UNITED STATES DISTRICT COURT

## EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ALMA HERNANDEZ, | 1:09cv2251 DLB |
| Plaintiff, | ORDER REGARDING PLAINTIFF'S SOCIAL SECURITY COMPLAINT |
| v. | |
| MICHAEL J. ASTRUE, Commissioner of Social Security, | |
| Defendant. | |

## BACKGROUND

Plaintiff Alma Hernandez ("Plaintiff") seeks judicial review of a final decision of the Commissioner of Social Security ("Commissioner") denying her application for supplemental security income pursuant to Title XVI of the Social Security Act. The matter is currently before the Court on the parties' briefs, which were submitted, without oral argument, to the Honorable Dennis L. Beck, United States Magistrate Judge.

## FACTS AND PRIOR PROCEEDINGS[1]

Plaintiff filed her application on December 19, 2005, alleging disability since November 10, 2005, due to a hip injury with arthritis, depression and chronic pain in her left hip and knee. AR 1140120, 127-133. After her application was denied initially and on reconsideration,

---

[1] References to the Administrative Record will be designated as "AR," followed by the appropriate page number.

1

Plaintiff requested a hearing before an Administrative Law Judge ("ALJ").  AR 60, 69, 95.  ALJ Michael J. Kopicki held a hearing on August 26, 2008, and issued an order denying benefits on January 22, 2009.  AR 5-15, 16-59.  On October 30, 2009, the Appeals Council denied review.  AR 103.

Hearing Testimony

ALJ Kopicki held a hearing in Fresno, California on April 24, 2007.  Plaintiff appeared with her attorney, Melissa Proudian.  Vocational expert ("VE") Jose Chaparro also appeared and testified.  AR 16.

Plaintiff testified that she was 34 years old at the time of the hearing.  Plaintiff was 5 feet, 2 inches tall and weighed 220 pounds, which was her usual weight.  She has 5 children, ages 6 through 14.  She lives with her 10 and 12 year old daughters.  AR 20-21.  Plaintiff has a driver's license but was not currently driving.  AR 21.  She graduated from high school and has vocational training as an office assistant.  AR 48-49.

Plaintiff believed that she could not work because she has had chronic pain in her left leg since her hip replacement and her legs "tend to give up" when she is walking.  Plaintiff broke her hip in 1997 when her leg got stuck in a gopher hole.  AR 22.  She also has Perthe's disease, which causes degeneration of the hip joint.  Plaintiff tried to work after breaking her hip but had difficulty with standing and lifting.  AR 23.  She worked at a gas station in 1999 and as a caregiver in 2003.  AR 25.

Plaintiff's hip worsened and she eventually underwent a hip replacement in April 2006.  She had a second surgery in May 2006 to fix a dislocation of the hip.  AR 26.  Her left leg is now shorter than the right.  AR 26.  She has chronic pain in her left hip and she sometimes feels that if she doesn't lay down and elevate her leg, it will pop out of place.  AR 27.  Plaintiff described the pain as a burning sensation that sometimes gets so intense that she breaks into a cold sweat and becomes dizzy.  AR 27.  She takes Vicodin, but it just "numbs" the pain and doesn't take it away.  It also makes her drowsy and sleepy.  AR 28.  Plaintiff has had injections but didn't think they helped.  She has also tried physical therapy but she was no longer allowed to go after missing two appointments.  Plaintiff explained that she was going to court with the father of her children at

the time. AR 29. When she tried to get another referral, her doctor told her to wait because he wanted to perform surgery from the knee to her foot. AR 29.

Plaintiff has to change position often so that her hip doesn't lock. If she's been walking for more than 30 minutes, her hip might lose strength and cause her to trip. AR 30. She has fallen many times and has even broken her cane "a little bit." AR 30. Plaintiff thought that she could walk 1.5 to 2 blocks, with her cane, before taking a rest. She thought that she could stand for 20 minutes, though she would have to be bending her knee during that time so that it doesn't lock. She thought that she could sit for 20 to 30 minutes, though she has to constantly move around in the chair. AR 33. Plaintiff thought that she could lift 10 to 15 pounds. AR 33. She did not think she could perform a sit down job because her leg would lock. AR 55.

On a typical day, she gets up when her daughters get up, though she doesn't help them get ready for school much. She prepares meals but does not do much housecleaning. Plaintiff sometimes washes dishes. She also does laundry and shops, though she uses the "little cars" at the store. Plaintiff explained that her daughters help with most of the cleaning. AR 34. Plaintiff doesn't socialize and usually just stays home and reads or watches television. AR 35. She sometimes helps her daughters with homework when it doesn't require too much concentration. AR 35.

Plaintiff is also depressed because of her pain. She takes Prozac, which doesn't always help. AR 36. It's been almost one year since Plaintiff has seen a doctor for her hip because she is scared of more surgery. AR 36, 44.

When questioned by her attorney, Plaintiff explained that she lays down and elevates her legs about 3 or 4 times a day, for about 15 to 20 minutes. This takes the pain away "a little bit." Plaintiff has also been wearing stockings that help with circulation for about 20 years. AR 37-38. She has trouble climbing stairs and has to stop and balance herself as she goes up. AR 39. Plaintiff also tends to lose her balance when she walks over uneven surfaces. AR 40.

Plaintiff's daughters don't like her to help because they think she is too slow. They only allow her to brush their hair. AR 40. Plaintiff also thought it took her about twice the amount of time to do activities because she has to be cautious not to fall. AR 41. Plaintiff thought that she

3

could concentrate for about 30 minutes before needing to change positions so her neck won't lock or her pain won't come back. AR 42. After about 5 minutes, she tries to continue concentrating. AR 42.

For the first hypothetical, the ALJ asked the VE to assume a person of Plaintiff's age, education and experience. This person could lift 20 pounds occasionally, 10 pounds frequently, and stand and/or walk 4 hours in an 8 hours day, with 5 minute breaks every 30 minutes. This person could sit without restriction but needs to use a cane when walking long distances or over uneven terrain. This person is limited to occasional kneeling, squatting and climbing stairs. The VE testified that this person could not perform Plaintiff's past relevant work but could perform the positions of ticket seller, outside deliverer and button sewing machine operator. AR 49-51.

For the second hypothetical, the ALJ asked the VE to assume that this person could lift 20 pounds occasionally, 10 pounds frequently and stand and/or walk for 2 hours total. This person needed a cane for prolonged ambulation or walking on uneven terrain. This person could sit for 6 hours and could occasionally squat, stoop, kneel, crawl, crouch and climb. The VE testified that this person could perform the positions of ticket seller and sewing machine operator. AR 51-52.

For the third hypothetical, the ALJ asked the VE to assume a person who could lift 10 pounds occasionally, 5 pounds frequently, stand and/or walk for 2 hours, for no more than 30 minutes at a time before needing to alternate positions for at least 5 minutes. This person could occasionally stoop, kneel, squat, crouch, crawl and climb stairs. This person would also need a cane for ambulation. The VE testified that this person could perform the position of ticket seller and sewing machine operator. AR 51-52.

For the fourth hypothetical, the ALJ asked the VE to assume that the person in the third hypothetical needed to alternate positions every 30 minutes, for a minimum of 5 minutes, before resuming sitting, standing or walking. The VE testified that this person could perform the position of ticket seller. AR 52-53.

If this person needed a 5 minute break every 30 minutes, she could not perform any work. AR 54.

For the fifth hypothetical, the ALJ asked the VE to assume that this person could walk 1.5 blocks with a cane before needing to rest, stand for 20 minutes at a time, sit for no more than 20 to 30 minutes at a time and can lift no more than 10 to 15 pounds. This person would need to elevate her feet 3 or 4 times a day for 15 to 20 minutes a time. The VE testified that this person could not perform any work. AR 54.

Medical Record

An x-ray of Plaintiff's pelvis and left hip dated April 24, 2004, showed a status post impacted femoral neck fracture with pins and subsequent deformity of the femoral head. AR 184.

On November 30, 2004, Plaintiff's treating physician, Madhava Narala, M.D., indicated that Plaintiff was disabled due to severe bilateral hip pain and could return to work on March 1, 2005. AR 214.

On March 31, 2005, Dr. Narala indicated that Plaintiff was disabled due to hip pain and could return to work on September 30, 2005. AR 210. Dr. Narala also completed a Department of Motor Vehicles form for a temporary disabled placard based on avascular necrosis of the hip. AR 211-212.

Plaintiff underwent x-rays of her left hip on November 9, 2005. The x-rays revealed a deformity of the left femoral head with flattening of the superior aspect. The deformity may be secondary to avascular necrosis, congenital abnormality or old fracture deformity. AR 228.

On February 21, 2006, Plaintiff saw Benjamin Chang, M.D., for a consultive physical examination. Plaintiff reported sharp, burning left hip pain that is aggravated by prolonged sitting, standing, walking, bending and lifting, and alleviated by a change in position and medication. On examination, Plaintiff was overweight and was in no acute distress. She walked with an antalgic gait and had difficulty with walking on her left toes and heel. Range of motion in Plaintiff's lumbar spine was decreased and she had mild tenderness to percussion in the right lower lumbar area of the spine. She had decreased range of motion and motor strength in her left hip. AR 215-218.

Dr. Chang diagnosed left hip pain, status post surgical repair for femoral neck fracture with pin placement and removal, with left leg length discrepancy. He did not believe that Plaintiff could perform work that required frequent bending and heavy lifting. Plaintiff could lift and carry 20 pounds occasionally and 10 pounds frequently, and stand and walk for 4 hours out of an 8 hour day with 5 minute breaks every 30 minutes. Plaintiff could sit without restriction. Plaintiff used a single point cane for long distances and on uneven terrain. She could kneel, squat and climb stairs occasionally. AR 218-219.

Plaintiff saw Dr. Narala on March 1, 2006, and continued to complain of pain in her left hip. Plaintiff had decreased range of motion in her left hip, edema and tenderness to palpation. Dr. Narala diagnosed hip dysplasia. AR 226.

Plaintiff underwent a left total hip replacement on April 27, 2006. She was discharged from the hospital on April 30, 2006, with an estimated length of disability of 6 to 8 weeks. AR 262-263.

On May 11, 2006, Plaintiff underwent surgery to repair a dislocated left total hip replacement. AR 235. After surgery, the lengths of her legs were equal. Plaintiff did "remarkably well" with rehabilitation efforts and with a front-wheeled walker. She was discharged from the hospital on May 16, 2006. AR 239-240.

Dr. Narala saw Plaintiff on May 24, 2006, and prescribed physical therapy. AR 258.

Plaintiff attended her initial physical therapy evaluation on June 26, 2006. AR 302. She was discharged from therapy on July 20, 2006, for failing to attend four scheduled appointments. AR 302.

On June 27, 2006, State Agency physician S.V. Reddy, M.D., completed a Physical Residual Functional Capacity Assessment. Dr. Reddy opined that Plaintiff could lift and carry 20 pounds occasionally, 10 pounds frequently, stand and/or walk for at least 2 hours in an 8 hour day and sit for about 6 hours in an 8 hour day. Plaintiff needed a medically required hand-held assistive device for ambulation. Plaintiff could occasionally climb ramps and stairs but could never climb ladders, ropes or scaffolds. She could occasionally balance, stoop, kneel, crouch and

1  crawl. Dr. Reddy noted that future improvement is expected and that a sedentary residual
2  functional capacity ("RFC") is appropriate. AR 249-254.
3      Plaintiff returned to Dr. Narala on October 25, 2006. She had decreased muscle tone in
4  her left quadriceps, decreased strength and left knee tenderness. Dr. Narala ordered an MRI and
5  x-ray of Plaintiff's left knee and prescribed physical therapy to strengthen her left leg and hip.
6  He noted that she had missed prior physical therapy appointments. AR 257.
7      On March 10, 2007, Plaintiff saw Abbas Mehdi, M.D., for a consultive physical
8  examination. Plaintiff continued to complain of significant left hip pain and pain radiating to the
9  left leg. She also reported difficulty walking, standing and climbing stairs. On examination,
10 Plaintiff was obese, had an antalgic gait and used a cane for ambulation. Range of motion in her
11 left hip was mildly to moderately restricted and produced pain. Patrick's sign and straight leg
12 raising were positive on the left. Pulses, motor strength and sensation were normal in the lower
13 extremities. AR 268-270.
14     Dr. Mehdi diagnosed likely hip dysplasia with degenerative joint disease and status post
15 total hip replacement with redo procedure in April and May 2006. He noted that Plaintiff
16 presented with significant hip pain. Dr. Mehdi opined that Plaintiff could lift and carry 50
17 pounds occasionally, 25 pounds frequently, stand and walk for 2 to 4 hours out of an 8 hour day
18 and sit without restriction. Plaintiff would be restricted from climbing, stooping, kneeling,
19 balancing and crouching. AR 270-271.
20     On March 27, 2007, State Agency physician D.D. Sharbaugh M.D., completed a Physical
21 Residual Functional Capacity Assessment. Dr. Sharbaugh opined that Plaintiff could lift and
22 carry 50 pounds occasionally, 25 pounds frequently, stand and/or walk for up to 4 hours in an 8
23 hour day and sit for about 6 hours in an 8 hour day. Plaintiff could occasionally climb, balance,
24 stoop, kneel, crouch and crawl. Plaintiff had to avoid working around unprotected heights due to
25 her hip limitations. AR 272-276.
26     On April 12, 2007, Plaintiff saw Greg Hirokawa, Ph.D., for a consultive psychiatric
27 examination. Plaintiff ambulated without assistance, though slowly. She stated that she recently
28 broke her cane. Plaintiff reported feeling depressed, feeling increased frustration and irritation,

7

thinking a lot, worrying and having mood swings.  Plaintiff explained that her symptoms of depression are primarily due to her physical problems, dealing with pain and not being able to work.  Plaintiff was not receiving mental health treatment and reported a suicide attempt last year.  She reported cooking and doing laundry.  She also gets her children up for school though she mainly spends the day at home and reads books.  She also goes to church.  AR 277-279.

On mental status examination, Plaintiff's stream of mental activity was within normal limits and thought content was appropriate.  Plaintiff's mood was depressed and her affect was appropriate to content.  Plaintiff reported poor sleep and appetite and denied suicidal ideation.  Plaintiff's intellectual functioning appeared to be within the average range and her recent and remote recall were intact.  She was able to perform a simple three-step command but could not spell the word "world" backwards.  Her concentration for conversation was adequate.  AR 277-280.

Dr. Hirokawa diagnosed adjustment disorder with depressed mood.  Her symptoms were within the mild range and her communication skills were fair.  The likelihood of Plaintiff's mental condition improving within the next 12 months was fair.  Plaintiff had mild limitations in all areas of work function.  AR 281.

Plaintiff returned to Dr. Narala on April 26, 2007.  She continued to complain of left hip pain with radiation to the left knee.

On May 24, 2007, State Agency physician Greg Ikawa, M.D., opined that Plaintiff's mental impairment was not severe.  Plaintiff had mild restrictions in activities of daily living and mild difficulties in maintaining concentration, persistence or pace.  AR 282-295.

ALJ's Findings

The ALJ found that Plaintiff had the severe impairments of left hip arthritis, status post hip replacement and obesity.  AR 10.  Despite these impairments, the ALJ determined that Plaintiff retained the RFC to lift and/or carry 10 pounds occasionally, 5 pounds frequently, stand and/or walk for 2 hours in an 8 hour day, sit for 6 hours in an 8 hour day and occasionally stoop, crawl, crouch, balance, climb and kneel.  AR 11.  Although Plaintiff could not perform her past

relevant work, she could perform a significant number of jobs in the national economy and was therefore not disabled. AR 14-15.

**SCOPE OF REVIEW**

Congress has provided a limited scope of judicial review of the Commissioner's decision to deny benefits under the Act. In reviewing findings of fact with respect to such determinations, the Court must determine whether the decision of the Commissioner is supported by substantial evidence. 42 U.S.C. 405 (g). Substantial evidence means "more than a mere scintilla," *Richardson v. Perales*, 402 U.S. 389, 402 (1971), but less than a preponderance. *Sorenson v. Weinberger*, 514 F.2d 1112, 1119, n. 10 (9th Cir. 1975). It is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson*, 402 U.S. at 401. The record as a whole must be considered, weighing both the evidence that supports and the evidence that detracts from the Commissioner's conclusion. *Jones v. Heckler,* 760 F.2d 993, 995 (9th Cir. 1985). In weighing the evidence and making findings, the Commissioner must apply the proper legal standards. *E.g.*, *Burkhart v. Bowen*, 856 F.2d 1335, 1338 (9th Cir. 1988). This Court must uphold the Commissioner's determination that the claimant is not disabled if the Secretary applied the proper legal standards, and if the Commissioner's findings are supported by substantial evidence. See *Sanchez v. Sec'y of Health and Human Serv.*, 812 F.2d 509, 510 (9th Cir. 1987).

**REVIEW**

In order to qualify for benefits, a claimant must establish that he is unable to engage in substantial gainful activity due to a medically determinable physical or mental impairment which has lasted or can be expected to last for a continuous period of not less than 12 months. 42 U.S.C. § 1382c (a)(3)(A). A claimant must show that he has a physical or mental impairment of such severity that he is not only unable to do her previous work, but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy. *Quang Van Han v. Bowen*, 882 F.2d 1453, 1456 (9th Cir. 1989).

The burden is on the claimant to establish disability. *Terry v. Sullivan*, 903 F.2d 1273, 1275 (9th Cir. 1990).

In an effort to achieve uniformity of decisions, the Commissioner has promulgated regulations which contain, inter alia, a five-step sequential disability evaluation process. 20 C.F.R. §§ 404.1520 (a)-(f), 416.920 (a)-(f) (1994).[2] Applying this process in this case, the ALJ found that Plaintiff: (1) had not engaged in substantial gainful activity since the alleged onset of her disability; (2) has an impairment or a combination of impairments that is considered "severe" (left hip arthritis, status post hip replacement and obesity) based on the requirements in the Regulations (20 CFR §§ 416.920(b)); (3) does not have an impairment or combination of impairments which meets or equals one of the impairments set forth in Appendix 1, Subpart P, Regulations No. 4; (4) could not perform her past relevant work; but (5) could perform a significant number of jobs in the national economy. AR 10-15.

Here, Plaintiff argues that the ALJ failed to properly evaluate her testimony.

## **DISCUSSION**

Plaintiff contends that the ALJ failed to provide legally sufficient reasons for rejecting her subjective symptom testimony.

In *Orn v. Astrue*, 495 F.3d 625, 635 (9th Cir. 2007), the Ninth Circuit summarized the pertinent standards for evaluating the sufficiency of an ALJ's reasoning in rejecting a claimant's subjective complaints:

> An ALJ is not "required to believe every allegation of disabling pain" or other non-exertional impairment. *See Fair v. Bowen*, 885 F.2d 597, 603 (9th Cir.1989). However, to discredit a claimant's testimony when a medical impairment has been established, the ALJ must provide "'specific, cogent reasons for the disbelief.'" *Morgan*, 169 F.3d at 599 (quoting *Lester*, 81 F.3d at 834). The ALJ must "cit[e] the reasons why the [claimant's] testimony is unpersuasive." *Id.* Where, as here, the ALJ did not find "affirmative evidence" that the claimant was a malingerer, those "reasons for rejecting the claimant's testimony must be clear and convincing." *Id.*
>
> Social Security Administration rulings specify the proper bases for rejection of a claimant's testimony. . . An ALJ's decision to reject a claimant's testimony cannot be supported by reasons that do not comport with the agency's rules. *See* 67 Fed.Reg. at 57860 ("Although Social Security Rulings do not have the same force and effect as the statute or regulations, they are binding on all components of the Social Security

---

[2] All references are to the 2002 version of the Code of Federal Regulations unless otherwise noted.

Administration, ... and are to be relied upon as precedents in adjudicating cases."); *see* *Daniels v. Apfel,* 154 F.3d 1129, 1131 (10th Cir.1998) (concluding that ALJ's decision at step three of the disability determination was contrary to agency regulations and rulings and therefore warranted remand). Factors that an ALJ may consider in weighing a claimant's credibility include reputation for truthfulness, inconsistencies in testimony or between testimony and conduct, daily activities, and "unexplained, or inadequately explained, failure to seek treatment or follow a prescribed course of treatment." *Fair,* 885 F.2d at 603; *see also* *Thomas,* 278 F.3d at 958-59.

In assessing Plaintiff's credibility, the ALJ determined that Plaintiff "certainly has a limiting orthopedic impairment that would reasonably cause discomfort with the performance of heavier lifting, extended walking or standing and related activities." AR 14. However, to the extent Plaintiff testified that she could not even perform sedentary work, the ALJ discredited her testimony. AR 14, 55.

He first explained that the objective medical evidence did not support Plaintiff's contention that she could not perform sedentary work. For example, all four RFC assessments suggested an RFC for sedentary work, at a minimum. AR 12. Similarly, although Plaintiff testified that her hip was worse after surgery, consultive examiner Dr. Mehdi found a greater RFC when he examined Plaintiff after her surgery. AR 12-13.

Contrary to Plaintiff's assertion, an ALJ is entitled to examine the objective evidence in determining credibility so long as it is not the only reason cited in rejecting a claimant's testimony. *Bunnell v. Sullivan,* 947 F.2d 341, 343 (9th Cir. 1991). As explained below, the ALJ cited additional reasons for questioning Plaintiff's testimony.

Plaintiff also points to instances throughout the record that document her complaints of chronic pain. Opening Brief, at 9. The ALJ did not find that Plaintiff was pain-free, however, but rather questioned her testimony as to the impact of that pain on her ability to work. The ALJ acknowledged that Plaintiff's impairment caused discomfort and it was his duty to examine Plaintiff's testimony in light of the evidence to determine an RFC. AR 14. The courts do not have the responsibility for weighing the evidence and resolving conflicts therein, that responsibility belongs to the Commissioner alone. *Richardson v. Perales,* 402 U.S. 389, 399 (1971). The Court must uphold the ALJ's decision where the evidence is susceptible to more than one rational interpretation. *Magallanes v. Bowen,* 881 F.2d 747, 750 (9th Cir. 1989).

Next, the ALJ cites Plaintiff's failure to attend her physical therapy appointments and her resulting discharge from the program. AR 13. The ALJ explained that Plaintiff began physical therapy in June 2006, but she did not attend a scheduled appointment in July. After missing the first appointment, staff left a message reminding Plaintiff of her next appointment. Plaintiff again missed her appointment. Staff left a message reminding Plaintiff of her next appointment and warning her that if she did not attend, she would be discharged. Despite the warning, Plaintiff missed an additional three appointments and was discharged from the program. AR 13, 301-308. The ALJ properly questioned Plaintiff's testimony based on her failure to follow her doctor's prescribed course of physical therapy after her 2006 surgeries.[3] *Bruton v. Massanari*, 268 F.3d 824, 828 (9th Cir. 2001) (claimant's failure to seek or follow prescribed treatment is a proper basis for finding her allegations of disabling pain and other symptoms not credible).

The ALJ next characterizes Plaintiff's activities of daily living as inconsistent with her testimony that she cannot perform even sedentary work. AR 14. For example, after her surgery, Plaintiff told Dr. Hirokawa that she took care of her children, cooked and did laundry. AR 11. At the hearing, she testified that she prepares meals, sometimes washes dishes, does laundry and shops using the "little cart" at the store. AR 34-35. Plaintiff also lives with her two young daughters, ages 10 and 12. AR 20-21. While it is true that these activities may not be consistent with an RFC for more than sedentary work, the ALJ is entitled to examine her activities in relation to her testimony about the impact of her impairments. For example, in *Burch v. Barnhart*, 400 F.3d 676, 680-681 (9th Cir. 2005), the claimant was able to care for her own personal needs, cook, clean, shop, interact with family and manage her own funds. The ALJ characterized Burch as "quite functional" and the Ninth Circuit upheld this determination.

Finally, the ALJ noted that Plaintiff has a "sparse" work history. AR 14. According to her Disability Report, Plaintiff graduated high school in 1992. AR 132. For the past 15 years, Plaintiff lists three jobs. Her longest held job was as a cashier at a gas station for 11 months in

---

[3] During the hearing, Plaintiff suggested that she missed the appointments because she was involved in court proceedings with her children's father. AR 29. Plaintiff did not have any communications with the physical therapy staff during this time and this explanation is therefore not documented in the record. Plaintiff also did not challenge the ALJ's finding based on this explanation.

1999. She also worked from August 2002 through October 2003 at a combination of two jobs. AR 128-129. In a later submitted work history, Plaintiff lists work for 12 months in 1992-1993, 4 months in 1995 and less than a month in 1996. AR 179. She has therefore worked less than 4 of the past 15 years, and the ALJ was entitled to question her credibility on this basis. *See Thomas v. Barnhart*, 287 F.3d 947, 959 (9th Cir. 2002).

The ALJ's credibility analysis is therefore supported by substantial evidence and free of legal error.

**CONCLUSION**

Based on the foregoing, the Court finds that the ALJ's decision is supported by substantial evidence in the record as a whole and is based on proper legal standards. Accordingly, this Court DENIES Plaintiff's appeal from the administrative decision of the Commissioner of Social Security. The clerk of this Court is DIRECTED to enter judgment in favor of Defendant Michael J. Astrue, Commissioner of Social Security and against Plaintiff, Alma Hernandez.

IT IS SO ORDERED.

Dated:   **January 3, 2011**          /s/ **Dennis L. Beck**
                                 UNITED STATES MAGISTRATE JUDGE